Ferne, Admrx., *v.* Chadderton et al., Appellants.

Argued September 27, 1949. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Carroll Caruthers*, with him *Ben H. Marks*, for appellants.

*D. J. Snyder, Jr.*, with him *William T. Dom, 3rd*, *Fred B. Trescher* and *Kunkle & Trescher*, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 14, 1949:

Because of the incongruous and wholly irregular verdicts awarded by the jury in this case a new trial must be granted.

A tractor, to which was attached a trailer-truck heavily loaded with pipe, was traveling in a southerly direction uphill on a two-lane black-top road near Freeport in Westmoreland County at about six to seven o'clock of a January night. The highway, due to a covering of snow and ice, was in quite a slippery condition. When part way up the hill the operator, Herbert Groce, started to shift gears, whereupon the wheels began to spin and the truck skidded and "jack-knifed" across the highway in such a position that the rear wheels of the trailer rested in a hollow portion of the berm on the northbound lane and the tractor and body of the truck stretched diagonally across that lane and part of the southbound lane. Groce attempted to extricate the truck by shoveling cinders under the wheels, a task in which he was engaged for a period of at least 15 minutes but without success. According to Groce's testimony the headlights of the tractor were lit but they were on low beam, and a bar light on the top of the cab consisting of three amber lights was also lit. Plaintiff's decedent, Harry A. Ferne, driving a gasoline-tank truck in a northerly direction down this same hill at a moderate rate of speed, upon rounding a sharp bend in the roadway suddenly saw defendant's truck about 100 feet ahead of him; being thus confronted, as he came down the rather steep grade, with an emergency situation, he quickly applied his brakes with the result that

his vehicle skidded into a guard rail along the side of the highway, and there came to rest at a distance of from 75 to 100 feet in front of defendant's truck. He himself was thrown forward against the steering wheel and sustained injuries which plaintiff, administratrix of his estate, claims were the cause of his death some nine months after the accident. She brought the present action under the Survival Statute on behalf of his estate and under the Death Statutes on behalf of herself as widow and his nine year old daughter, and obtained verdicts against Groce and Groce's employer, Edward W. Chadderton. Defendants now appeal from the court's refusal to grant their motions for judgment n. o. v. and for a new trial.

The suit is based upon the failure of Groce to comply with The Vehicle Code of May 1, 1929, P. L. 905, section 824, (added to the Code by the Act of May 25, 1933, P. L. 1064, and as subsequently amended) which provides that whenever any vehicle of a certain type[1] and its lighting equipment are disabled during the period when lighted lamps must be displayed on vehicles, and such vehicle cannot immediately be removed from the main traveled portion of the highway, or if the lighting equipment is not disabled but, due to the position of the vehicle upon the highway or by reason of contours or curves in the highway, it may constitute a menace to other vehicular traffic, the operator must light and place flares upon the highway, one at a distance of approximately 100 feet in advance of the vehicle, one at a distance of approximately 100 feet to the rear of the vehicle, and one upon the highway side of the vehicle, each flare to be visible from a distance of at least 500 feet. There is no question in the present case but that defendant's vehicle was "disabled", because it was not able to move of

---

[1] The provision is limited to commercial vehicles, or combination of vehicles, having a gross weight of 11,000 pounds or more. Defendant's vehicle came within that category.

its own power, and its lighting equipment may also be said to have been disabled because, by reason of the diagonal position in which the tractor lay across the roadway, its lights would be ineffective as to approaching vehicles; in any event the flares were required, as the jury evidently found, because of the position of the vehicle in relation to the curve or bend in the highway. It is also clear that the failure to place the flares was the proximate cause of the accident, or at least a jury might so find (*Helmick v. South Union Township*, 323 Pa. 433, 439, 185 A. 609, 611) since, according to the testimony of one of plaintiff's witnesses, the headlights of a vehicle coming around the bend in the road would not bring the disabled truck into view at a distance of more than approximately 100 feet, so that the operator of a vehicle approaching on the down grade of the hill might well feel the necessity of stopping abruptly, with the resulting likelihood of his skidding on the icy road. Nor is there any evidence in the case to convict decedent of contributory negligence, since his truck was being operated at a moderate rate of speed, and, in attempting to make a quick stop, he was acting in what was apparently an emergency situation. Defendants' motions for judgment n. o. v. were therefore properly overruled.

Unfortunately the learned trial judge charged the jury that if they brought in a verdict in favor of the plaintiff they should "decide how much the plaintiff is entitled to receive, and, also, decide how much Chadderton, as owner of the truck, must pay, and, also, how much, if any, the driver, Groce, should be required to pay". This naturally invited the result that followed, namely, the rendition by the jury of verdicts in different amounts against Groce and Chadderton, to wit, against Groce in favor of decedent's estate $50, in the widow's favor nothing, and in favor of the daughter $50, but a verdict against defendant Chadderton in favor of decedent's estate $2500, in

the widow's favor $1500, and in favor of the daughter $5000. It is obvious that such verdicts are legally indefensible since the liability of Chadderton results solely from his status as employer on the principle of respondeat superior; there being no question of punitive damages in the case it is clear that he cannot be assessed a greater measure of damages than that imposed upon his employe, who was the active tortfeasor. Even in an action against *joint* tortfeasors the verdict must be for a lump sum against all and the damages cannot be apportioned among them (*McCarthy v. DeArmit*, 99 Pa. 63, 72; *Huddleston v. Borough of West Bellevue*, 111 Pa. 110, 123, 2 A. 200, 204; *MacHolme v. Cochenour*, 109 Pa. Superior Ct. 563, 567, 167 A. 647, 648) and where the defendants are in the relation of employer and employe, as in the present instance, the applicability of this principle is even more obvious. Plaintiff argues that this defect in the verdicts should not cause a reversal because at the time of their rendition defendants made no objection thereto. In support of that contention she relies on the case of *East Broad Top Transit Co. v. Flood*, 326 Pa. 353, 192 A. 401. There, however, probably through mere inadvertence, there was a failure to return any verdict whatever as to the employe; the case therefore stood as if the latter had not been sued at all; there was no rendition of inconsistent verdicts as in the present instance.

There is another reason why these verdicts cannot be allowed to stand. The trial judge charged that the widow was entitled to certain damages and the daughter was entitled to certain damages, with the result that the jury assessed a specific sum in favor of the one and a specific sum in favor of the other. The Death Statute of April 26, 1855, P. L. 309, provides that the sum recovered in the action shall go to the parties beneficially entitled thereto in the proportions

in which they would take the personal estate of the decedent in case of intestacy; therefore the award made by the jury in such actions is not to be apportioned by them among the beneficiaries; their award must be merely a lump sum which is then distributable as prescribed by the statute.

Defendants are justified in their contention that the court's charge was neither clear nor accurate in regard to the measure of damages recoverable in this kind of action. Under the Death Statutes the administratrix was entitled to recover for the benefit of the daughter and herself as widow the amount of the pecuniary loss they suffered by reason of decedent's death, that is to say, the present worth of the amount they probably would have received from his earnings for their support during the period of his life expectancy and while the family relationship continued between them,[2] but without any allowance for mental suffering, grief, or loss of companionship; in other words, the measure of damages is the value of the decedent's life to the parties specified in the statute: *Minkin v. Minkin*, 336 Pa. 49, 55, 7 A. 2d 461, 464. Recovery is also allowed for the expense incurred for medical and surgical care, for nursing of the deceased, and for the reasonable funeral expenses: Act of May 13, 1927, P. L. 992. Under the Survival Statute the administratrix was entitled to recover for the loss of decedent's earnings from the time of the accident until the date of his death, and compensation for his pain and suffering during that period. Recovery may also be had for the present worth of his likely earnings during the period of his life expectancy, but diminished by the amount of the provision he would

---

[2] In the case of the minor the period of family relationship is not necessarily terminated by the attainment of her majority: see *Muzychuk, to use, v. Yellow Cab Co.*, 343 Pa. 335, 341, 342, 22 A. 2d 670, 673.

have made for his wife and children as above stated (thus avoiding duplication: *Pezzulli, Administrator, v. D'Ambrosia*, 344 Pa. 643, 650, 26 A. 2d 659, 662) and diminished also by the probable cost of his own maintenance during the time he would likely have lived but for the accident: *Murray, Administrator, v. Philadelphia Transportation Co.*, 359 Pa. 69, 73, 74, 58 A. 2d 323, 325.

The accident in this case happened on January 24, 1945; decedent died October 22, 1945. The only professional witness who testified as to his injuries was Dr. A. H. Colwell, who attended him from May 6 to October 4, 1945. Defendants assert that plaintiff should have produced as a witness Dr. Gordon Jones, who treated decedent shortly after the time of the accident and again immediately before his death, and that she should also have produced the records of the hospital where he died. As to this matter the court properly instructed the jury that it was for them to weigh the significance of plaintiff's failure to offer this testimony. "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him. It is an inference of fact, not a presumption of law": *Hall v. Vanderpool*, 156 Pa. 152, 155, 26 A. 1069, 1071; *Peters v. Shear*, 351 Pa. 521, 525, 41 A. 2d 556, 558. However, in view of the fact that the case is to be retried, it may be proper here to point out that the testimony in the present record is extremely tenuous in regard to the causal connection between the injuries received by decedent and his subsequent death (Dr. Colwell testified that he died of a *chronic* valvular heart condition); it would therefore seem important that Dr. Jones be produced to testify in regard to this subject.

There was no error in allowing Dr. Colwell to testify that decedent suffered pain: *Lutz v. Scranton*, 140 Pa. Superior Ct. 139, 145, 146, 13 A. 2d 121, 124. Had the doctor doubted the existence of such pain he certainly would not have administered "repeated shots of morphine".

Decree overruling defendants' motions for judgment n. o. v. affirmed; decree dismissing defendants' motion for new trial reversed; the judgment is reversed and new trial awarded.