**Michael VRABEL, in his own right and as Administrator of the Estate of Scott Vrabel, deceased,**

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 2004.

Decided March 9, 2004.

---

Robert McDermott, Pittsburgh, for appellant.

David M. Paul, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, and SIMPSON, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

Commonwealth of Pennsylvania, Department of Transportation (PennDOT) appeals from an order of the Court of Common Pleas of Fayette County (trial court) denying its motion for a judgment n.o.v. PennDOT seeks judgment n.o.v.: 1) in its favor entirely, due to plaintiff Michael Vrabel's (Vrabel) failure to call an expert witness to testify the fatal accident was caused by water on the road; and, 2) in the alternative, to mold the verdict downward by $50,000, because parents are not permitted to bring wrongful death actions for loss of services of their children. We affirm with respect to liability and reverse with respect to damages, thereby effective-

ly removing the $50,000 award under what is commonly known as the Wrongful Death Act.[1]

In November 1997, Scott Vrabel (son), a volunteer firefighter, was driving a brush truck[2] to the scene of an emergency. He lost control of his vehicle as he was rounding a right-hand curve at which water flowed across the road. The vehicle hit a utility pole and flipped over, killing son.

The administrator of his son's estate, Vrabel, brought suit against PennDOT, alleging it permitted a known dangerous condition, the water, to exist on the roadway that caused his son's death. Vrabel's suit included a wrongful death count on behalf of the son's parents, Vrabel and his wife, and a survival count on behalf of the estate.

After trial, the jury found PennDOT was negligent and PennDOT's conduct was a substantial factor in bringing harm. The jury also found the son contributorily negligent, assigning 51% of the causal negligence to PennDOT and 49% to the son. The jury awarded Vrabel $50,000 for the wrongful death action and $160,000 for the survival action. The trial court molded the verdict to reflect the causal negligence findings, plus delay damages.

PennDOT then filed the post-trial motion at issue here, seeking to have judgment in its favor due to Vrabel's failure to call an expert witness to testify the accident was caused by water on the road. Alternatively, PennDOT sought judgment for a reduced amount because parents may not bring wrongful death actions for loss of their children's services. The trial court denied PennDOT's motions, and PennDOT appealed to this Court.

---

1. 42 Pa.C.S. § 8301.

2. A brush truck is a pick-up truck with a water tank and hose attached to its bed.

## I.

PennDOT no longer contests the finding of negligence, but it challenges the finding of causation. PennDOT alleges Vrabel's failure to call an expert witness to testify that the water on the roadway caused the accident is fatal to his claim.[3] Vrabel counters that the circumstantial evidence he presented was such that no expert was needed to testify to the cause of the accident.

PennDOT relies on *Young v. Dep't of Transp.*, 560 Pa. 373, 744 A.2d 1276 (2000), and *Tennis v. Fedorwicz*, 140 Pa.Cmwlth. 7, 592 A.2d 116 (1991). In *Young*, the plaintiffs alleged PennDOT's failure to place particular traffic signs caused the accident. However, the plaintiffs did not produce expert testimony that established PennDOT's legal duty to place those particular signs or established the lack of signs caused the accident. As our Supreme Court noted, plaintiffs offered "no expert testimony or evidence which would show that [PennDOT] owed a duty, breached that duty, or were causally responsible for the accident." *Young*, 560 Pa. at 379, 744 A.2d at 1279. Accordingly, the plaintiffs were denied recovery.

In *Tennis*, the plaintiffs alleged the road was negligently designed, but they failed to offer expert testimony to that effect. This Court concluded expert testimony was required to prove that the road was negligently designed.

In both *Young* and *Tennis*, the court found expert testimony was necessary to establish the duty of care where the duty is of an engineering nature. Here, the issue is not duty or breach of duty, but rather causation.

Expert testimony is necessary where the subject matter involves special skill and training beyond the knowledge of a layman. *Young*, 560 Pa. at 376–77, 744 A.2d at 1278; Pa.R.E. 702. However, because the use of motor vehicles is so common, courts do not restrict testimony about the operation of motor vehicles to expert witnesses. Indeed, our courts routinely permit lay witnesses to opine as to speeds of vehicles and to estimate times and distances of vehicular travel. *See, e.g., Solomon v. Baum*, 126 Pa.Cmwlth. 646, 560 A.2d 878 (1989). *See also* Pa.R.E. 701; *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978). Similarly, a modern jury, qualified through voir dire and provided with sufficient circumstantial evidence, is competent to decide whether water streaming across a road at a curve is a substantial factor in causing a previously controlled vehicle to lose control. A holding to the contrary would effectively require accident reconstruction testimony in every trial concerning a vehicular collision, an absurd result.

Vrabel asserts his evidence is sufficient to establish causation without the use of an expert. The trial court agreed. The trial court pointed to the testimony of numerous witnesses that water frequently crossed the road at the curve in question when it rained (Reproduced Record (R.R.) at 176a, 179a, 182a), and that water was, in fact, crossing the road at the time of the accident. R.R. at 427a, 448a; Certified Record (C.R.) No. 133 at 123, C.R. No. 133 at 131–32. Various witnesses described the depth of the water crossing the road when it rained as 1/16th of an inch deep

---

**3.** When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we reverse only where the denial amounts to an abuse of discretion or an error of law. We must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict winner. *Lanning v. West*, 803 A.2d 753 (Pa.Super.2002).

(R.R. at 176a, 182a, 221a), a "thin sheet" (R.R. at 179a), or "water sheeting" (R.R. at 211a). One witness who arrived on the scene approximately 20 minutes after the accident stated the water's depth was 1/16th of an inch. R.R. at 201a–02a. Another witness the day of the accident testified the water's depth was an "inch, two inches maybe. Not even." R.R. at 897a. The trial court also noted that the two eyewitnesses to the accident testified the truck was in control as it entered the curve but lost control immediately upon entering the stream of water.[4] R.R. at 426a, 448a. Accordingly, the trial court concluded there was sufficient circumstantial evidence to support a finding that PennDOT's negligence in permitting a stream of water to flow across the road was a substantial factor in causing the accident. We agree.

Viewing all evidence in the light most favorable to Vrabel, there is sufficient circumstantial evidence that the water flowing across the road caused son's accident, and the trial court did not abuse its discretion or commit an error of law.

## II.

■ PennDOT next claims the portion of damages awarded by the jury for the wrongful death action should be stricken.[5] PennDOT relies solely upon this Court's recent decision in *Dep't of Public Welfare v. Schultz*, 822 A.2d 876 (Pa.Cmwlth.2003), *petition for allowance of appeal granted*, 575 Pa. 165, 835 A.2d 707 (2003).

We agree the $50,000 damages awarded for the wrongful death action must be stricken, for two reasons. First, as articulated in *Schultz*, parents may not recover non-economic losses associated with the death of their child. Second, Vrabel did not prove his economic losses with sufficient specificity for the jury to assign a dollar amount without speculating.

## A.

■ In *Schultz*, this Court defined the question to be answered as, "whether a parent can recover for the non-economic loss of the guidance, support, comfort, maintenance, companionship, and society of a child under the Wrongful Death Act in the context of Sovereign Immunity." *Id.* at 877. *Schultz* involved an adult child with profound retardation, who died after he walked out of a state facility; the child's mother brought both a wrongful death action and a survival action against the state Department of Welfare and the facility. This Court reviewed the relevant case law and determined, "We find no support in our law for the proposition that a parent may recover for the non-economic loss of the guidance, support, comfort, maintenance, companionship and society of a child under the Wrongful Death Act in the context of Sovereign Immunity and we conclude as a matter of law that such damages are not recoverable." *Id.* at 878.

Vrabel counters that *Schultz* is inapposite as the deceased child in *Schultz*, due to his profound mental retardation, was unable to render services to his parents. Accordingly, Vrabel claims, *Huda v. Kirk*, 122 Pa.Cmwlth. 129, 551 A.2d 637 (1988), *Quinn v. Dep't of Transp.*, 719 A.2d 1105

---

4. In addition to the evidence noted by the trial court, we note there was testimony at trial that the brush truck was regularly serviced and well maintained (R.R. at 486a–87a) and that its tires were in good condition and were not under-inflated (R.R. at 505a).

5. Our review is plenary for the question of whether Vrabel is entitled to damages under the Wrongful Death Act, because it does not involve questions of fact but only of law. *Dep't of Public Welfare v. Schultz*, 822 A.2d 876, 877, n. 1 (Pa.Cmwlth.2003), *petition for allowance of appeal granted*, 575 Pa. 165, 835 A.2d 707 (2003).

(Pa.Cmwlth.1998), and *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1 (1994) control to permit their recovery under the Wrongful Death Act for the loss of their son's services.

We disagree that the cases upon which Vrabel relies are dispositive. In *Huda*, which included a claim against PennDOT for loss of a wife and mother, this Court concluded a wrongful death action may be maintained against a state agency for certain limited damages. In *Quinn*, which also included a claim against PennDOT, we permitted a claim for loss of parental services, such as loss of a father's guidance, tutelage and moral upbringing. However, neither *Huda* nor *Quinn* involved a claim by a parent occasioned by death of a child. Therefore, neither case controls the current claim by parents for loss of a child.

In *Kiser*, which did not include a claim against a state agency, our Supreme Court noted that recoverable wrongful death damages include the present value of services the deceased would have rendered to the family, plus funeral and medical expenses. However, *Kiser* did not involve application of the Sovereign Immunity Act; consequently, the case is inapposite to this controversy where the Sovereign Immunity Act applies.

We acknowledge the trial court did not have the benefit of our recent decision in *Schultz* at the time of trial. Failure to predict our decision is no basis for criticism, especially in light of the thoughtful and professional manner in which the trial was handled here. Nevertheless, under *Schultz*, parents may not recover for non-economic loss of consortium of a child. *Schultz* controls, and Vrabel may not recover for the non-economic losses enumerated in that case.

### B.

■ Vrabel also claims Wrongful Death Act damages for "loss of services" of decedent which have a pecuniary value. As a general rule, pecuniary loss embraces the amount of the deceased's probable earnings that would have gone for the benefit of the children, parent, husband or wife and is broad enough to include the value of probable services that would, in the ordinary course of events, be of benefit to one within this class. *Gaydos v. Domabyl*, 301 Pa. 523, 152 A. 549, 555 (1930). *See* Pa. SSJI (Civ) § 6.10, Subcommittee Note (Second ed., January, 2003 revision).

In *Huda*, we permitted a claim for "loss of the value of decedent's services" among damages recoverable against the Commonwealth in a wrongful death action. Here, however, Vrabel did not present sufficiently specific testimony to permit the jury to assign a dollar amount to the loss of those services without speculation.

■ Our Supreme Court summarized the level of proof required to establish damages as:

> The 'law does not require that proof in support of claims for damages or in support of compensation must conform to the standard of mathematical exactness'..... All that the law requires is that '(a) claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough'.... 'If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation.'

*Kaczkowski v. Bolubasz*, 491 Pa. 561, 567, 421 A.2d 1027, 1030 (1980) (citations omitted). Our Supreme Court also noted, "[W]here damages are susceptible of being proved the amount must be established with certainty." *Aiken Indus., Inc. v. Wilson*, 477 Pa. 34, 44, 383 A.2d 808, 813

(1978) (citations omitted). "The amount and items of pecuniary damage cannot be presumed but must be proved by the establishment of facts." *Gordon v. Trovato,* 234 Pa.Super. 279, 338 A.2d 653, 654 (1975). The burden of proving damages is on the plaintiff, and the question of damages may not be submitted to the jury if the plaintiff fails to meet this burden. *Id.*

Here, Vrabel submitted no testimony as to the value of the services he received from his son. Vrabel testified his son worked at the family store to help out (C.R. No. 150 at 23), but later stated his son was paid for that work. C.R. No. 150 at 32.[6] Testimony also indicated the son helped Vrabel and his wife with things that needed to be done at home (C.R. No. 150 at 24), including helping with groceries and in the yard (C.R. No. 150 at 43); helped other relatives and older people (C.R. No. 150 at 40); and would have helped Vrabel and his wife as they got older (C.R. No. 150 at 43).

Vrabel's case lacked any testimony about the amount of the son's earnings that would have been paid for Vrabel's benefit, as required by *Gaydos.* Also lacking was any testimony concerning the amount of Vrabel's loss for not having his son's help around the house, with groceries or in the yard. These are items that may be quantified[7] and, thus, were required to be quantified so the jury did not engage in speculation as to their amount. *Aiken Indus., Inc.* While Vrabel was not required to quantify these amounts with mathematical certainty, the testimony offered provided no reasonable basis for the jury to calculate the pecuniary loss.

The trial court instructed the jury to consider an award for "the services, soci-

ety and comfort that Scott would have given—Scott Vrabel would have given to the plaintiff's family had Scott lived, including such elements as work around the home, provisions of physical comfort and services and the provision of society and comfort. These are the elements of a wrongful death claim." R.R. at 564a. However, neither loss of services, an economic loss, nor loss of consortium, a non-economic loss, is recoverable here. Therefore, the trial court erred in failing to grant post-trial relief as to the $50,000 award under the Wrongful Death Act.

Accordingly, we affirm the trial court's denial of PennDOT's post-trial motion as to liability. However, we reverse and remand for the sole purpose of calculating PennDOT's liability without including $50,000 in damages under the Wrongful Death Act, which is stricken.

### ORDER

AND NOW, this 9th day of March, 2004, the order of the trial court is affirmed in part and reversed and remanded in part. We affirm the trial court's denial of PennDOT's post-trial motion as to liability. We reverse and remand for the sole purpose of calculating PennDOT's liability without including $50,000 in damages under the Wrongful Death Act, which is stricken.

Jurisdiction relinquished.

---

6. Loss of earnings was among the amounts recovered in the survival action here.

7. We note, for example, no testimony was offered as to Vrabel's cost to hire someone to help him in the yard and to do work around the house.