**[J-25AB-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | |
|---|---|
| TINA MCMICHAEL, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF SETH W. MCMICHAEL, DECEASED | : No. 50 WAP 2019<br>:<br>: Appeal from the Order of the<br>: Superior Court entered April 15,<br>: 2019 at No. 721 WDA 2018, |
| v. | : affirming in part and reversing part<br>: the Judgment of the Court of<br>: Common Pleas of Beaver County |
| MICHELLE J. MCMICHAEL, EXECUTRIX OF THE ESTATE OF PETER D. MCMICHAEL, DECEASED; JANICE MCMICHAEL; P&J CONSTRUCTION AND LANDSCAPE NURSERY LLC; AND MARKWEST ENERGY PARTNERS, L.P. | : entered May 7, 2018 at No. 11370-<br>: 2013 and remanding.<br>:<br>: SUBMITTED: April 16, 2020<br>:<br>:<br>: |
| APPEAL OF: MICHELLE J. MCMICHAEL, EXECUTRIX OF THE ESTATE OF PETER D. MCMICHAEL, DECEASED, AND P&J CONSTRUCTION AND LANDSCAPE NURSERY LLC | :<br>:<br>:<br>:<br>:<br>: |
| TINA MCMICHAEL, INDIVIDUALLY, AND AS EXECUTRIX OF THE ESTATE OF SETH W. MCMICHAEL, DECEASED, | : No. 51 WAP 2019<br>:<br>: Appeal from the Order of the<br>: Superior Court entered April 15, |
| Appellee | : 2019 at No. 795 WDA 2018,<br>: affirming in part and reversing part<br>: the Judgment of the Court of |
| v. | : Common Pleas of Beaver County<br>: entered May 7, 2018 at No. 11370-<br>: 2013 and remanding. |
| MICHELLE J. MCMICHAEL, EXECUTRIX OF THE ESTATE OF PETER D. MCMICHAEL, DECEASED, AND P&J CONSTRUCTION AND LANDSCAPE NURSERY LLC, | :<br>: SUBMITTED: April 16, 2020<br>:<br>:<br>:<br>: |
| Appellants | : |

**JUSTICE TODD**                                        **DECIDED:  NOVEMBER 18, 2020**

In this appeal by allowance, we consider whether the trial court abused its discretion in denying a motion for a new trial following a jury award of zero dollars in damages in a wrongful death action.  Upon review, we conclude that the trial court erred in denying a new trial with respect to the non-economic damages award,[1] and, therefore, we affirm in part and reverse in part the Superior Court's decision remanding for a new trial, limiting the new trial on remand to non-economic damages.

Peter McMichael and his wife, Janice McMichael, entered into a lease with MarkWest Energy Partners, LP (hereinafter "MarkWest") whereby MarkWest was to install a natural gas pipeline on the McMichaels' property in Beaver County, Pennsylvania.  The lease required MarkWest to hire P&J Construction and Landscaping Nursery, LLC (hereinafter "P&J"), which was owned by the McMichaels, to perform the tree clearing on the property in preparation for the installation of the pipeline.  Peter McMichael, on behalf of P&J, hired his 51-year-old nephew, Seth McMichael (hereinafter, "Decedent"); Decedent's son, David; and another individual, Michael Hudak, all of whom were familiar with the process of tree removal, to assist in clearing the trees on the property.  On January 25, 2013, while Peter McMichael was supervising the tree clearing process, he simultaneously was using a bulldozer to clear an access road.  As a result, Peter would periodically turn his back to the tree cutters.  At a time when Peter's back was turned, a tree cut by Hudak split and fell towards Decedent, striking him from behind and killing him.

On August 30, 2013, Tina McMichael, Decedent's widow and executrix of his estate (hereinafter, "Wife"), filed a wrongful death and survival action on behalf of herself,

---

[1] As discussed *infra*, wrongful death damages may include both economic and non-economic damages.

individually, and on behalf of Decedent's estate, against Peter McMichael, Janice McMichael, P&J, and MarkWest, raising claims of premises liability, negligence, and negligent supervision.[2] At a jury trial, Wife presented the testimony of an economic expert, Dr. William Houston Reed, who calculated Decedent's projected lost income at various ages. Wife also testified that Decedent had performed home repairs, mowed the lawn, did 80% of the cooking, and drove her to work in inclement weather. She stated that, as a result of her husband's death, she was unable to service the furnace, and had to work overtime in order to pay bills. Notably, however, neither the economic expert, nor Wife herself, proffered an estimated value of the loss of these household contributions by Decedent, nor did Wife offer any evidence as to the cost of hiring someone to perform these tasks.

The jury awarded Wife, as executrix of Decedent's estate, $225,000 in survival damages, which was reduced to $135,000 to reflect the jury's finding that Decedent was 40% negligent, and, of particular import in this appeal, zero dollars in wrongful death damages.[3] Wife sought a new trial on her claims for wrongful death and survival damages, and P&J sought judgment notwithstanding the verdict, or a new trial on liability. With regard to Wife's motion, and relevant to the instant appeal, the trial court concluded, *inter alia*, that Wife failed to present sufficient evidence of the value of her economic and non-economic loss for wrongful death damages and, thus, the jury was free to award zero dollars in damages on the wrongful death claim. Specifically, with regard to the evidence of economic loss, the court stated:

---

[2] The trial court dismissed the complaint against Janice McMichael following preliminary objections, and Wife settled with MarkWest prior to trial. Peter McMichael, David McMichael, and Michael Hudak all died prior to trial.
[3] The verdict slip contained separate lines for the jury to record the amount of economic and non-economic damages; the jury indicated "$0" on both lines.

> Unlike the evidence presented in [*Kiser v. Schulte*, 648 A.2d 1 (Pa. 1994)], in which the economic expert provided a specific range of value of the services provided by the decedent, [Wife's] expert in this case, Dr. William Houston Reed, did not present any testimony on the value of any services provided by [Decedent]. Moreover, there was absolutely no testimony with regard to the amounts that [Decedent] contributed to his family during his lifetime. The only thing that Dr. Reed testified to was a reduction in the amount of economic loss under the Survival Act for lost wages based upon personal maintenance for [Decedent] himself. . . .
>
> The only testimony offered with regard to services provided to the family came from [Wife], who testified that [Decedent] performed repairs around the house such as cutting grass and did other projects around the house such as building a grape arbor for her on Mother's Day. There was no testimony whatsoever as to a value for these services, nor was there any testimony as to the amount of costs associated with these services or projects. In fact, there was nothing that the jury had to accept, and the jury was free to reject this testimony under the case law set forth above because it was not definite. No one testified as to any economic contributions that [Decedent] provided to his family.

Trial Court Opinion, 4/19/18, at 21-22.

Cognizant that a spouse may also recover wrongful death damages for non-economic loss, which includes loss of companionship, comfort, society, guidance, solace, and protection, as well as loss of consortium, *see Spangler v. Helm's New York-Pittsburgh Motor Express*, 153 A.2d 490, 492 (Pa. 1959), the trial court noted that, although Wife testified "that she had a good marriage with [Decedent], which lasted from 1982 to the time of his death in 2012," Wife "barely touched upon their actual relationship and what they did in their time spent together during her testimony." Trial Court Opinion, 4/19/18, at 23. Explaining that it found "no evidence of unfairness, mistake, partiality, prejudice, corruption or the like that requires disregarding the jury's rejection of the claim for non-economic damages," the court denied Wife's motion for a new trial. The trial court

also denied P&J's post-trial motions, and the parties cross-appealed to the Superior Court.

In a unanimous unpublished memorandum opinion, the Superior Court affirmed in part, reversed in part, and remanded for further proceedings. *McMichael v. McMichael & P&J Construction and Landscape Nursery LLC*, 721 & 795 WDA 2018, 2019 WL 1613152 (Pa. Super. filed April 15, 2019). Of particular relevance herein, the Superior Court reversed the trial court's denial of a new trial on Wife's wrongful death damages claim. In so doing, the court first noted that Wife testified regarding Decedent's "services to the household, including repairs, servicing the furnace, mowing the lawn, cooking, and driving Wife to work in inclement weather." *Id.* at 27. Citing this Court's opinion in *Carroll v. Avallone*, 939 A.2d 872, 875 (Pa. 2007) ("if there is no argument or opposition on a particular point, the jury may not be free to disregard such information"), the Superior Court concluded that P&J "did not contest, through expert testimony, cross examination, or argument, the services Decedent rendered to his household with regard to wrongful death damages." *McMichael*, 721 & 795 WDA 2018, at 30.

The Superior Court acknowledged that P&J "vaguely reference[d] wrongful death damages" in its closing argument, wherein P&J's counsel stated:

> Another item of damages is the support that [Decedent] was providing to the family, and so, I don't recall hearing any testimony about what that was. We know [Wife] works full-time, and I don't believe there was any indication there were any children living in the home, so you'll have to determine what, if any, amount that was, whether there was any additional support to the family, and the Judge instructs on all [of that], you don't have to rely on me.

*Id.* at 29-30 (quoting N.T. Trial, 7/17/17 (Excerpt II), at 7). The court opined, however, that "counsel's failure to recall what evidence Wife presented does not amount to a challenge to the underlying facts supporting Wife's wrongful death damages." *Id.* at 30.

The Superior Court ultimately concluded:

> While Wife did not present specific dollar amounts for the services Decedent rendered to the household, it unquestionably amounted to more than zero dollars. Instead of attempting to estimate the amount of these services, the jury completely disregarded the evidence presented on the question of wrongful death damages and settled on an inadequate amount of zero dollars. Therefore, we conclude that the trial court abused its discretion in denying Wife's motion for a new trial as to wrongful death damages.

*Id.*

P&J filed a petition for allowance of appeal with this Court, and we granted review to consider whether the trial court abused its discretion in denying Wife's motion for a new trial based on the jury's award of zero dollars in wrongful death damages, as held by the Superior Court.

Prior to addressing the arguments of the parties, we briefly review the distinction between survival damages and wrongful death damages. A survival action under 42 Pa.C.S. § 8302 is brought by the administrator or executor of a decedent's estate in order to recover damages for the decedent's pain and suffering, the loss of gross earning power from the time of injury to death, and the loss of earning power, less personal maintenance expenses, for the estimated working life span of the decedent. *Kiser,* 648 A.2d at 4. By contrast, a wrongful deathful action pursuant to 42 Pa.C.S. § 8301 is designed to compensate the spouse, children, and parents of the deceased for the pecuniary loss they have sustained as a result of the decedent's death, and damages may include the present value of services that would have been rendered to the family had the decedent lived, as well as funeral and medical expenses. *Id.* In each case, the burden of proving damages is on the plaintiff, and the amount and items of pecuniary damage cannot be presumed but must be proven by facts and, where possible, with certainty. *See Vrabel*

*v. Com., Dep't of Transp.*, 844 A.2d 595, 601 (Pa. Cmwlth. 2004), *abrogation in part recognized by Ewing v. Potkul*, 171 A.3d 10 (Pa. Cmwlth. 2017).[4]

Turning to the arguments of the parties, P&J maintains that, where the evidence in a wrongful death action is comprised of the testimony of the party seeking damages, that testimony must be sufficiently specific to permit the jury to assign a value to the lost services without engaging in speculation. P&J Brief at 25-26 (citing *Vrabel*). P&J contends that the Superior Court erred in reversing the trial court's denial of Wife's motion for a new trial on wrongful death damages because Wife failed to present testimony or evidence regarding (1) medical, funeral, or estate administration expenses that were incurred or paid; (2) the amount Decedent contributed for the family's food, shelter, or other necessities; or (3) the amount Decedent spent on gifts or entertainment for the family. *Id.* at 10. P&J also highlights that the joint tax returns of Wife and Decedent, which were admitted into evidence, demonstrated that Wife was the main wage earner. *Id.*

Acknowledging that Wife "testified briefly, and relatively vaguely," regarding the services Decedent allegedly provided, "such as planting trees and shrubs, home repairs, yard work, cooking, and driving [Wife] to work in the winter if the roads were bad," P&J avers that Wife did not submit any testimony or evidence to establish the *value* of those services. *Id.* at 11. P&J points out that the trial court itself "took note" of the "lack of evidentiary support" for Wife's wrongful death claim, as revealed by the court's statement during an in-chambers conference immediately prior to closing arguments that the jury "may not find any evidence that [Decedent] supported his family, and therefore that could

---

[4] In *Ewing*, the Commonwealth Court noted that this Court's decision in *Department of Public Welfare v. Schultz*, 855 A.2d 753 (Pa. 2004), abrogated *Vrabel* to the extent it allowed anyone other than a decedent's spouse to recover damages for loss of consortium. *Ewing*, 171 A.3d at 17.

be zero, or it could be any number in between. There wasn't really a lot of evidence." *Id.* at 12-13 (quoting Transcript of In-Chambers Conference, 7/17/17 (R.R. at 136a)). With regard to Wife's proffered evidence of non-economic damages, P&J characterizes it as "scant," and limited almost entirely to Wife's oral testimony. *Id.* at 11.

As to the Superior Court's finding that P&J did not challenge the underlying facts supporting Wife's claim for wrongful death damages, and, thus, that her evidence of damages was uncontroverted and could not be disregarded by the jury, P&J responds that it "challenged her veracity on a very material point and challenged her credibility globally." *Id.* at 30-31. Specifically, P&J recounts that Wife made a statement at trial that, in the immediate aftermath of her son David's death, Peter McMichael told her that she had just lost her "star witness" in the case, as David had been present at the time of the accident. P&J further notes that Wife's counsel repeatedly argued that Peter McMichael's comment was "highly inculpatory." *Id.* at 32. P&J emphasizes, however, that, during her cross-examination, Wife admitted that Peter McMichael never made this statement to her. Rather, she claimed that Peter McMichael made the alleged remark to someone else, who then told her about it, although she could not recall the identity of that person. *Id.* P&J suggests that, particularly in light of the fact that the trial court, without objection, gave the jury a *falsus in uno, falsus in omnibus* charge,[5] it was the jury's prerogative to disbelieve some or all of Wife's testimony.

In light of the above, P&J maintains that the trial court properly refused to grant Wife a new trial on wrongful death damages, and that the Superior Court erred by usurping the trial court's role in determining whether the jury's verdict shocked the

---

[5] *Falsus in uno, falsus in omnibus*, which translates to "false in one, false in all," is a legal precept which provides that, where a witness testifies falsely to any material fact, the jury may, but is not required to, disregard all the witness's testimony. *Commonwealth v. Ieradi*, 64 A. 889 (Pa. 1906).

conscience of the court. P&J further suggests that the Superior Court's decision, in effect, created a *per se* rule requiring an award of wrongful death damages in nearly every case, regardless of the evidence proffered at trial, which is contrary to the well-established principle that damages are never presumed, and must be proven by competent evidence. *Id.* at 25 (citing *Maxwell v. Schaefer*, 112 A.2d 69 (Pa. 1955); *Vrabel*).

In response, Wife first disputes P&J's assertion that the Superior Court has, in effect, created a *per se* rule requiring wrongful death damages in all cases. Wife suggests that the Superior Court's holding was limited to the facts of the instant case, and that the court simply concluded "that awarding zero dollars was a clear indication that this jury completely disregarded the *uncontroverted* testimony and evidence presented in this case." Wife's Brief at 20 (emphasis original).

Wife further contends that the Superior Court's holding does not require a jury to engage in "improper speculation" to assign values to the lost services of Decedent, and, therefore, that its decision does not contravene *Vrabel*. *Id.* at 21. Arguing that "damages are only considered speculative if there is uncertainty regarding the existence of the damages rather than the ability to precisely calculate the value or amount of the damages," Wife maintains that there was "ample evidence" that Decedent provided both economic and non-economic contributions to Wife and the household, and that the damages were "readily identifiable" to the jury. *Id.* at 22-23 (emphasis original). Wife argues that, under Pennsylvania law, "a claim for damages may be sustained if the amount may be fairly estimated from the evidence." *Id.* at 23 (citing, *inter alia*, *Carroll by Burbank v. Phila. Hous. Auth.*, 650 A.2d at 1097, 1100 (Pa. Cmwlth. 1994)). Suggesting that the value of the services Decedent contributed to the household, such as cooking, yard work, and making home repairs, "are most certainly matters of common knowledge

easily evaluated by any lay person," she avers that expert testimony as to the value of those services was neither necessary, nor proper. *Id.* at 24.

Finally, Wife contends that, even if this Court were to agree with the trial court's determination that she failed to present sufficient evidence to support an award for lost services, the Superior Court properly determined that the jury's award of zero dollars in damages could not stand because it is "inconceivable that any jury could find, absent prejudice, passion, corruption, confusion or mistake," that the 30-year marriage of Wife and Decedent was "worth nothing." *Id.* at 26 (emphasis original). In this regard, Wife suggests that her testimony about her relationship was "compelling," and asserts that it is the quality, not the quantity, of the evidence that controls. *Id.* at 27. She reiterates her trial testimony that she and Decedent enjoyed spending leisure time together and doing projects around the house; that they planned to build a log cabin where they would live when they retired; and that she is no longer treated to breakfast every morning or spontaneous date nights. *Id.* at 27-28. She further argues that, because the foregoing testimony was not disputed or contradicted, under *Carroll v. Avallone*, the jury was not free to disregard it, notwithstanding P&J's challenge to her inconsistent testimony regarding the comment allegedly made to her by Peter McMichael regarding her deceased son. *Id.* at 28.

In reviewing an order granting a new trial, "our standard of review is limited to determining whether the trial court abused its discretion or committed an error of law." *Carroll v. Avallone*, 939 A.2d at 874 (citation omitted). A new trial "should only be granted where the jury's verdict shocks one's sense of justice because it is so contrary to the evidence admitted at trial." *Id*. Furthermore, it is the province of the jury to assess the worth of all testimony presented, and the jury is free to believe all, some, or none of the witness testimony presented at trial. *Id.* Nevertheless, "the jury's verdict may be set aside

if it is the product of passion, prejudice, partiality, or corruption, or if it is clear the verdict bears no reasonable relationship to the loss suffered by the plaintiff based on the uncontroverted evidence presented." *Id.*

We first consider the economic aspect of the jury's verdict of zero dollars in damages for wrongful death. It is undisputed that Wife did not present any evidence of medical, funeral, or estate administration expenses. Thus, Wife's potential recovery for economic damages was limited to the loss of Decedent's services. In this regard, Wife offered her own testimony that Decedent performed home repairs, mowed the lawn, did most of the cooking, and drove her to work when the weather was bad. Neither Wife, nor her economic expert, however, testified to the estimated value of these contributions, or the cost of hiring someone to perform these tasks.

As noted above, the burden of proving damages is on the plaintiff, and the amount and items of pecuniary damages cannot be presumed, but must be proven by facts and, where possible, with certainty. *Vrabel,* 844 A.2d at 601. The value of the contributions that Decedent was alleged to have made to the household are of a type which courts have held are quantifiable and capable of being proven to a jury. In *Vrabel*, for example, a father filed an action against PennDOT following the death of his son, who was a volunteer firefighter killed when he lost control of the vehicle he was driving to the scene of an emergency. Vrabel alleged that PennDOT's negligence in allowing water to accumulate on the road caused the accident, and sought both survival and wrongful death damages. The jury awarded Vrabel $160,000 in survival damages and $50,000 in wrongful death damages, and PennDOT appealed.

The Commonwealth Court reversed the award of wrongful death damages, concluding that Vrabel "did not prove his economic losses with sufficient specificity for the jury to assign a dollar amount without speculating." *Id.* at 599. The court noted that

Vrabel had testified at trial that his son helped Vrabel and his wife "with things that needed to be done at home, including helping with groceries and in the yard; helped other relatives and older people; and would have helped Vrabel and his wife as they got older." *Id.* at 601 (record citations omitted). The court explained, however:

> [L]acking was any testimony concerning the amount of Vrabel's loss for not having his son's help around the house, with groceries or in the yard. These are items that may be quantified and, thus, were required to be quantified so the jury did not engage in speculation as to their amount. . . . While Vrabel was not required to quantify these amounts with mathematical certainty, the testimony offered provided no reasonable basis for the jury to calculate the pecuniary loss.

*Id.* The court observed, for example, that no testimony was offered as to the cost of hiring someone to help Vrabel in the yard and to do work around the house. *Id.*[6]

This Court's decision in *Kiser* also was grounded on the principle that the amount of damages must bear a rational relationship to *proven* economic damages. In that case, we determined that the Superior Court properly remanded the case for a new trial

---

[6] Justice Mundy, in her Concurring and Dissenting Opinion, contends that Wife's "uncontroverted testimony" was sufficient to establish "Appellants' negligence caused pecuniary loss to Wife, *i.e.* to prove damages in Wife's wrongful death action," and "provided a 'reasonably fair basis' for the jury to assign a value to those services." Concurring and Dissenting Opinion (Mundy, J.) at 2-3. As discussed above, we recognize that Wife testified that Decedent contributed to the household in a number of ways. However, Wife failed to offer any evidence as to the *economic value* of those contributions, which she was required to do under the law. See *Vrabel*, *supra*; *Kiser*, *supra*. While Justice Mundy would limit *Vrabel* to its specific facts − a parent seeking wrongful death damages for the loss of services of his adult son − she provides no rationale for such a limited construction. With regard to Justice Mundy's quote from *Rowles v. Evanuik*, 38 A.2d 255 (Pa. 1944), to support her position that, because Wife proved that she suffered pecuniary loss in the form of her loss of Decedent's services, "the jury was required to assign a value to those damages," and Wife's failure to do so did not support an award of zero damages, Concurring and Dissenting Opinion at 6, we note that, unlike Wife with respect to her asserted wrongful death damages, the plaintiff in *Rowles* did, in fact, introduce evidence, including the decedent's age, occupation, past and current wages, and health, by which the jury was able to calculate, without simply speculating, the amount of damages.

because the jury's total award of $25,000 for both wrongful death damages and survival damages was "clearly inadequate," in light of the plaintiffs' expert testimony regarding their economic losses and the value of the loss of services following the death of their 18-year-old daughter. *Kiser*, 648 A.2d at 4. The plaintiffs' expert in *Kiser* had testified that the net economic loss to their daughter's estate pursuant to their survival action was between $232,400 and $756,081, and he valued her lost services in their wrongful death action as $11,862 to $18,980. Recognizing that "a jury is free to believe or disbelieve opinion evidence presented by an expert witness," *id.* at 5, we nonetheless observed:

> [T]he uncontroverted testimony of the [Plaintiffs'] expert established that the net economic loss resulting from Ms. Kiser's death ranged from $232,400 to $756,081.43. The defense did not present any other experts or any other evidence to the contrary on the question of damages. When faced with such uncontroverted evidence, a jury's verdict must bear a reasonable resemblance to the *proven damages*.

*Id.* at 6 (emphasis added, footnote omitted). We concluded that the jury's award did not bear "any rational relationship to the uncontroverted testimony presented" by the plaintiffs' expert. *Id.*

Herein, although Wife testified that Decedent contributed to the household in several ways, she did not offer any evidence as to the economic value of those contributions, and the jury thus would have been forced to engage in speculation regarding that value.[7] Further, as noted by P&J in its brief, during an in-chambers

---

[7] Wife cites *Carroll by Burbank* in support of her argument that the "indefiniteness" of the amount of damages does not preclude relief, and an award may be sustained if the amount of damages can be fairly estimated from the evidence. In that case, a mother filed an action against a public housing authority for medical costs arising from maintenance and support of her child, who was severely and permanently injured as a result of a fall down an elevator shaft. The mother claimed that she might become liable for medical bills not covered by prior settlement agreements reached on behalf of the child. The trial court granted summary judgment in favor of the housing authority, reasoning that the mother's claim was based on several contingencies, including, *inter*

conference prior to closing argument, the trial judge observed that there "wasn't really a lot of evidence," and he suggested that the jury "may not find any evidence that [Decedent] supported his family, and therefore [the wrongful death damages] could be zero." Transcript of In-Chambers Conference, 7/17/17 (R.R. at 136a). Indeed, during his closing argument, Wife's counsel also recognized the lack of evidence to support an award of economic wrongful death damages:

> Now, on the verdict slip there's going to be three separate . . . lines, and the first category is going to be the loss of support to his family. . . .
>
> And in this particular category, you heard Tina McMichael was working at that time, and, as a result, she was able to support herself on her own wages to some extent. She was making money herself, and so Seth McMichael's support to her would have been relatively small in comparison to the other damages in this case.
>
> And so on line number one I would say that a fair and reasonable amount would be a relatively small amount compared to the other damages I'm about to talk about.

N.T. Trial, 7/17/17, at 31-32 (R.R. at 194a-195a).

---

*alia*, the insufficiency of the settlements, thus rendering the mother's claim remote and speculative. The Commonwealth Court reversed, noting that the question before it was "not whether Burbank is entitled to recovery, but whether the trial court erred in denying her the opportunity to present her claim to a trier of fact." 650 A.2d at 1100. It further explained that "there is no question as to the fact of damages," but that the uncertainty concerned "whether the amount provided in the settlement agreements for [Child's] maintenance and support will be sufficient." *Id.* Thus, while *Carroll by Burbank* recognized that a plaintiff must be afforded the opportunity to prove her claim for future damages, and that "summary judgment is improperly granted solely on the basis that the amount of damages is indefinite," *id.*, it does not, in our view, support Wife's position that a jury may speculate as to the value of lost services when a plaintiff offers into evidence a description of the alleged lost services, but fails to offer evidence of the economic value of those services.

As the trial court predicted that, based on the paucity of evidence, the jury might not award any wrongful death damages, and Wife's own counsel suggested that the amount of Wife's economic damages was "relatively small," it is unsurprising that the jury's award of zero dollars in that regard did not shock the court's sense of justice. *See Carroll v. Avallone*, 939 A.2d at 874. Thus, in light of the lack of evidence presented at trial regarding the value of lost services resulting from Decedent's death, we find there was no basis for the Superior Court's conclusion that the trial court abused its discretion in denying Wife's motion for a new trial based on the jury's award of zero dollars in economic damages.[8]

Wife maintains, however, that even if the trial court properly concluded that the jury's verdict of zero dollars in economic damages was supported by the record, the Superior Court properly found that the trial court abused its discretion in denying her motion for a new trial because the jury's award of zero dollars in *non-economic* damages for the loss of "a husband, friend and partner of 30 years" could only have been the result of prejudice, passion, corruption, confusion, or mistake. Wife's Brief at 27. Responding to P&J's observation that her testimony regarding her relationship with Decedent comprised only 10 pages of the trial transcript, Wife avers that it is "the quality, not the quantity, of evidence that controls," and she reiterates that their marriage was "happy," that they had three children, and that they enjoyed spending time together. *Id.*

---

[8] We do not suggest that a plaintiff always must present *expert* testimony to establish the value of lost services in a wrongful death action. The jury, however, must be given some guidance in assessing the value of those lost services. *See, e.g., Vrabel*, 844 A.2d at 601 (where plaintiff failed to offer any testimony regarding the cost to hire someone to perform the work the deceased would have performed had he been alive, plaintiff failed prove economic losses with sufficient specificity to allow the jury to assign a dollar amount without engaging in speculation). As discussed above, Wife presented no evidence whatsoever as to the value of lost services, and, thus, the jury would have been required to engage in speculation in assigning a value thereto.

Initially, we note that the Superior Court did not distinguish between economic and non-economic wrongful death damages in its opinion, nor did it address whether Wife was entitled to non-economic wrongful death damages. Rather, in concluding that the jury "completely disregarded the evidence presented on the question of wrongful death damages and settled on an inadequate amount of zero dollars," the Superior Court focused solely on the concept of economic damages. *McMichael*, 721 & 795 WDA 2018, at 30 ("While Wife did not present specific dollar amounts *for the services Decedent rendered to the household*, it unquestionably amounted to more than zero dollars." (emphasis added)). Although, as discussed above, we find that Wife failed to offer sufficient evidence to support her claim for economic wrongful death damages, and thus conclude that the trial court did not err in denying her motion for a new trial on that basis, we cannot say the same with respect to the jury's award of zero dollars for *non-economic* wrongful death damages.

It bears repeating that the duty of assessing damages, whether economic or non-economic, is within the province of the jury, and, as trier of fact, the jury weighs the veracity and credibility of the witnesses and their testimony. As a result, a verdict may not be disturbed simply

> because the evidence is conflicting or because the court would have reached a different conclusion . . .; rather, the award of a new trial based upon inadequacy of a verdict is proper only where the jury's finding appears to have resulted from "passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff."

*K.H. v. J.R.*, 826 A.2d 863, 875 (Pa. 2003) (quoting *Kiser*, 648 A.2d at 4).

In the case *sub judice*, we find that the amount of the verdict − zero dollars − with respect to non-economic wrongful death damages bears no reasonable relation to the

proffered evidence of loss suffered by Wife. Wife testified that she and Decedent were happily married for 30 years, and had three children together. N.T. Trial, 7/13/17, at 153 (R.R. at 97a). She testified that they enjoyed spending their leisure time together, often working on projects around the house, such as planting trees and blueberry bushes. *Id.* at 155 (R.R. at 99a). Wife testified that she and Decedent planned to build a log cabin on a piece of property they owned, and intended to reside there. *Id.* at 161 (R.R. at 105a). Wife also testified that Decedent fixed her breakfast every morning, and would surprise her with spontaneous "date nights." *Id.* at 162 (R.R. at 106a). As this Court has recognized, things "such as companionship, comfort, society, guidance, solace, and protection which go into the vase of family happiness [ ] are the things for which a wrongdoer must pay when he shatters the vase." *Spangler,* 153 A.2d at 492. Further, in contrast to the proof required for economic damages, "[t]he fact that there is no mathematical formula whereby compassionately bestowed benefits can be converted into a precise number of bank notes does not mean that the tortfeasor will be excused from making suitable reimbursement for their loss." *Id.*

P&J maintains that it was within the jury's prerogative to discount all of Wife's testimony based on her inconsistent statements regarding the comment allegedly made to her by Peter McMichael regarding her deceased son, *see supra* page 8, statements which the Superior Court acknowledged undercut Wife's credibility.[9] Nevertheless, we

---

[9] The Superior Court acknowledged this when it addressed P&J's claim that the trial court erred in denying its motion for a new trial on the grounds that Wife's counsel misled both P&J and the trial court by stating, at a hearing on P&J's motion *in limine*, that, following the death of David McMichael, Peter McMichael allegedly told Wife that she had lost her star witness. The Superior Court agreed with the trial court's determination that P&J had waived its hearsay challenge to the trial court's admission of the statement, and further observed that P&J sought to raise new theories of relief on appeal. The Superior Court further concluded that, even if the issue had not been waived, P&J was not prejudiced by the statement because "[c]ounsel's effective cross examination undercut Wife's credibility regarding the statement." *McMichael*, 721 & 795 WDA 2018, at 23.

cannot agree that P&J's challenge to Wife's "credibility globally," P&J Brief at 31, negated Wife's otherwise uncontroverted testimony regarding her relationship with Decedent, so as to support an award of zero dollars in non-economic wrongful death damages for a widow who lost her husband of 30 years. In finding "no evidence of unfairness, mistake, partiality, prejudice, corruption or the like that requires disregarding the jury's rejection of the claim for non-economic damages," Trial Court Opinion, 4/19/18, at 23, the trial court noted that, during Wife's testimony, she "barely touched upon" her actual relationship with Decedent, and what they did in the time they spent together. *Id.* We acknowledge that Wife might have presented more extensive or detailed testimony regarding her relationship with Decedent. However, based on the testimony recounted above, and bearing in mind that, in contrast to economic damages, non-economic damages are not subject to ready proof, *see Spangler,* 153 A.2d at 492, we conclude that the jury's award of **zero** dollars in non-economic wrongful death damages bears no reasonable relation to the loss suffered by Wife, and, therefore, that it shocks one's sense of justice. Thus, we hold that the trial court abused its discretion in denying Wife's motion for a new trial based on the jury's award of zero dollars in non-economic wrongful death damages.

Accordingly, for the reasons set forth above, we affirm the Superior Court's order in part and reverse in part, and remand this matter to that court, for remand to the trial court, for a new trial on damages for wrongful death, limited to non-economic damages.

Jurisdiction relinquished.

Chief Justice Saylor and Justices Baer and Wecht join the opinion.

Justice Mundy files a concurring and dissenting opinion.

Justice Dougherty files a dissenting opinion.

Justice Donohue did not participate in the consideration or decision of this case.