**[J-25A-2020 and J-25B-2020] [MO:Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| TINA MCMICHAEL, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF SETH W. MCMICHAEL, DECEASED | : | No. 50 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered April 15, |
| | : | 2019 at No. 721 WDA 2018, |
| v. | : | affirming in part and reversing part |
| | : | the Judgment of the Court of |
| | : | Common Pleas of Beaver County |
| MICHELLE J. MCMICHAEL, EXECUTRIX | : | entered May 7, 2018 at No. 11370- |
| OF THE ESTATE OF PETER D. | : | 2013 and remanding. |
| MCMICHAEL, DECEASED; JANICE | : | |
| MCMICHAEL; P&J CONSTRUCTION AND | : | SUBMITTED: April 16, 2020 |
| LANDSCAPE NURSERY LLC; AND | : | |
| MARKWEST ENERGY PARTNERS, L.P. | : | |
| | : | |
| | : | |
| APPEAL OF: MICHELLE J. MCMICHAEL, | : | |
| EXECUTRIX OF THE ESTATE OF PETER | : | |
| D. MCMICHAEL, DECEASED, AND P&J | : | |
| CONSTRUCTION AND LANDSCAPE | : | |
| NURSERY LLC | : | |

| | | |
|---|---|---|
| TINA MCMICHAEL, INDIVIDUALLY, AND AS EXECUTRIX OF THE ESTATE OF SETH W. MCMICHAEL, DECEASED, | : | No. 51 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered April 15, |
| Appellee | : | 2019 at No. 795 WDA 2018, |
| | : | affirming in part and reversing part |
| | : | the Judgment of the Court of |
| v. | : | Common Pleas of Beaver County |
| | : | entered May 7, 2018 at No. 11370- |
| | : | 2013 and remanding. |
| MICHELLE J. MCMICHAEL, EXECUTRIX | : | |
| OF THE ESTATE OF PETER D. | : | SUBMITTED: April 16, 2020 |
| MCMICHAEL, DECEASED, AND P&J | : | |
| CONSTRUCTION AND LANDSCAPE | : | |
| NURSERY LLC, | : | |
| | : | |
| Appellants | : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE MUNDY**                                    **DECIDED: NOVEMBER 18, 2020**

In this case, the jury found Appellants were negligent and their negligence was a factual cause of harm to Decedent. Verdict Slip, 7/17/17, at 1 (R.R. at 247). Nonetheless, the jury proceeded to award Wife zero dollars in economic and non-economic wrongful death damages. *Id.* at 3 (R.R. at 249). Because the jury's award had "no reasonable relationship to the loss suffered by the plaintiff based on the uncontroverted evidence presented," *Carroll v. Avallone*, 939 A.2d 872, 874 (Pa. 2007), I join the Majority's decision to affirm the Superior Court's decision remanding for a new trial on non-economic damages. However, I dissent from the Majority's holding to the extent it does not also remand for a new trial on economic damages.

In awarding a new trial on non-economic damages, the Majority explains "we cannot agree that P&J's challenge to Wife's 'credibility globally,' P&J Brief at 31, negated Wife's otherwise uncontroverted testimony regarding her relationship with Decedent, so as to support an award of zero dollars in non-economic wrongful death damages for a widow who lost her husband of 30 years." Maj. Op. at 17. Similarly, I conclude that Wife's uncontroverted testimony of the services Decedent provided to their household does not support an award of zero dollars in economic wrongful death damages.

Wife's uncontroverted testimony was that Decedent performed household repairs, mowed the lawn, landscaped, cooked 80% of their meals, and drove Wife to work in inclement weather. N.T., 7/13/17, at 155-57 (R.R. at 99a-101a). As examples of Decedent's contributions to their household, Wife testified that after Decedent's death she had to hire help to repair her hot water tank and her furnace, which were ordinarily repairs Decedent would have performed. *Id.* at 156-57 (R.R. at 100a-101a). Additionally, Wife stated she had to take down a grape arbor that Decedent had built for her as a Mother's

Day gift because she could not maintain it. *Id.* at 156 (R.R. at 100a). This uncontroverted evidence was sufficient to establish Appellants' negligence caused pecuniary loss to Wife, *i.e.*, to prove damages in Wife's wrongful death action. *See Carroll*, 939 A.2d at 875 ("[i]f there is no argument or opposition on a particular point, the jury may not be free to disregard such information"); *Neison v. Hines*, 653 A.2d 634, 637 (Pa. 1995) (explaining "a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic," which was the holding of *Kiser v. Schulte*, 648 A.2d 1 (Pa. 1994)); *Gaydos v. Domabyl*, 152 A. 549 (Pa. 1930) (explaining "[t]he reasonable expectation of pecuniary advantage to one standing in the family relation may be shown in many ways, but more frequently through services, food, clothing, education, entertainment, and gifts bestowed . . . [and] rendered with a frequency that begets an anticipation of continuance"). Further, this evidence provided a "reasonably fair basis" for the jury to assign a value to those services. *Kaczkowski v. Bolubasz*, 421 A.2d 1027, 1030 (Pa. 1980) (quotation marks and citation omitted). Accordingly, because Wife presented uncontroverted evidence establishing damages, the jury's award of zero damages did not have any reasonable relationship to Wife's injury. *See Carroll*, 939 A.2d 874; *Neison*, 653 A.2d at 637.

As support for its conclusion that the award of zero damages was not shocking due to "the paucity of evidence," the Majority quotes both Wife's counsel's closing argument and the trial court's comments in an in-chambers conference. Maj. Op. at 13-14. To the extent the comments on the evidence, as opposed to the evidence itself, are relevant, those comments do not support the Majority's conclusion. In the portion of Wife's counsel's closing argument quoted by the Majority, Wife's counsel was referring exclusively to the monetary support Decedent would have contributed to Wife, which counsel characterized as "a relatively small amount compared to the other damages I'm

about to talk about."[1]  N.T., 7/17/17, at 31-32 (R.R. at 194a-195a).  The Majority does not mention that Wife's counsel then spoke about Wife's non-economic damages, or loss of consortium, as including the loss of Decedent's household services:

> [W]hat I can tell you is that those lost wages I mentioned a moment ago . . . that's just the tip of the iceberg, the part of the iceberg that just juts above the top of the water and then below the water line, the rest of that iceberg, that part, that is the life damages in this case.
>
> Now, Tina's entitled to be compensated for the loss of Seth's household services, society, comfort, and affection over the last four-plus years and into the future, past and future.
>
> And you heard that Seth did a great amount around the house, that he was good at fixing things and took care of the lawn, and that's all fine, but I think the most telling example was this is a woman who works six days a week and takes all the overtime that she can, but when her furnace broke, her husband Seth wasn't there to fix it, and she couldn't afford a new one.  So in the winter time she has a little space heater in her home and she walks around in a winter coat.  That's the loss that Seth could have helped her with.

N.T., 7/17/17, at 34-35 (R.R. at 197a-198a).[2]  Thus, Wife's counsel argued that the loss of Decedent's household services was a component of what he viewed as the largest

---

[1] Reading this argument in the context of the in-chambers conference, Wife's counsel likely argued for a small amount of monetary support because the trial court intended to mold the verdict by deducting any award of support from the lost earnings award in the survival action.  N.T., In-Chambers Conference, 7/17/17, at 5-6 (R.R. 132a-133a); *see also Tulewicz v. Southeastern Pa. Transp. Auth.*, 606 A.2d 427, 431 (Pa. 1992); *Pezzulli v. D'Ambrosia*, 26 A.2d 659, 662 (Pa. 1942).

[2] This conformed to the verdict slip's characterization of economic damages as "support to family" and non-economic damages as "loss of companionship, affection, assistance, etc."  Verdict Slip, 7/17/17, at 3 (R.R. at 249a); *see also* N.T., Jury Instructions, 7/17/17, at 53-54 (stating economic loss is "the amount of money that [Decedent] would have contributed to his family for support" and noneconomic loss is "the amount of money that will fairly and adequately compensate [] for the loss of companionship, cooperation, affection, and assistance . . . .  This is an area that has no economic figure given to you").  *But see Spangler v. Helm's N.Y.-Pittsburgh Motor Exp.*, 153 A.2d 490, 491-92 (Pa. 1959)

category of damages, even more substantial than the lost wages in the survival action. Likewise, the trial court's comments in the in-chambers conference were limited to the financial support Decedent provided Wife from his wages, not the household services he provided: "[the jury] may not find any evidence that he supported his family, and therefore that could be zero, or it could be any number in between. There wasn't really a lot of evidence, but the charge says it doesn't have to be a mathematical certainty." N.T., In-Chambers Conference, 7/17/17, at 9 (R.R. at 136a). Neither Wife's counsel's closing argument nor the trial court's remarks in the in-chambers conference support the Majority's reading of them as minimizing the value of the loss of Decedent's household services.

Further, in holding that the jury was not permitted to "engage in speculation" regarding the value of the loss of Decedent's household services because Wife did not quantify their economic value, the Majority adopts the Commonwealth Court's rationale in *Vrabel v. Commonwealth*, 844 A.2d 595 (Pa. Cmwlth. 2004). Maj. Op. at 13. *Vrabel*, however, involved a parent seeking wrongful death damages for the loss of services of his adult son. *Id.* at 597. It should remain limited to those facts. As this Court recognized in *Department of Public Welfare v. Schultz*, 855 A.2d 753 (Pa. 2004), a parent's claim for the wrongful death of a child cannot include a claim for non-pecuniary losses (loss of consortium), as it is different from a spousal claim. *Id.* at 755. As spousal wrongful death claims are thus different in kind from the wrongful death claim of a parent arising out of an adult child's death, I would not expand *Vrabel*'s requirement to quantify pecuniary losses to spousal wrongful death claims.

---

(stating pecuniary losses include the value of the decedent's services, including household work).

Additionally, the three cases the *Vrabel* Court cited to justify its rule that a wrongful death plaintiff must prove the amount of the loss involved more readily quantifiable damages than those involved in the loss of a spouse's services. *See Kaczkowski*, 421 A.2d at 1034 (authorizing the computation of lost future earnings to include inflation and productivity); *Aiken Indus., Inc. v. Estate of Wilson*, 383 A.2d 808, 812-13 (Pa. 1978) (stating that the exact amount of breach of contract damages are generally difficult to prove, but the net profit percentage is able to be determined with some specificity); *Gordon v. Trovato*, 338 A.2d 653, 657 (Pa. Super. 1975) (holding a plaintiff must prove lost wages with specific evidence).

As this Court has recognized,

> It is frequently impossible to prove by direct evidence the actual amount in money contributed by a husband for the benefit of his wife and family. When there is testimony as to the age of the deceased, the expectancy of life, his occupation, the wages he received at and before the time of accident, the condition of his health, his habits of life as to industry, and that deceased was living with and keeping his wife and children, there is sufficient [evidence] on which a jury can properly find compensatory damages.

*Rowles v. Evanuik*, 38 A.2d 255, 258 (Pa. 1944).

I would apply *Rowles* to the loss of a spouse's services in spousal wrongful death actions. Here, Wife proved she suffered pecuniary loss in the form of the loss of decedent's services sufficiently through uncontroverted evidence, and the jury was required to assign a value to those damages. That Wife did not attempt to reduce to a dollar amount the value of her loss of Decedent's services does not support an award of zero damages. The "[d]amages for wrongful death are the value of decedent's life to the family." *Slaseman v. Myers*, 455 A.2d 1213, 1218 (Pa. Super. 1983). Here, the jury's verdict that Decedent's life had no economic value to Wife bears no reasonable relationship to the uncontroverted evidence. *See Carroll*, 939 A.2d at 874; *Neison*, 653

A.2d at 637; *see also* N.T., Jury Instructions, 7/17/17, at 56 (R.R. at 235a) (stating the life expectancy of all persons of Decedent's age was an additional 20.5 years according to the United States Department of Health and Human Services). At a minimum, Wife was entitled to nominal damages on these facts. *Accord McMichael v. McMichael*, 2019 WL 1613152, at *13 (concluding "[w]hile Wife did not present specific dollar amounts for the services Decedent rendered to the household, it unquestionably amounted to more than zero dollars").[3] Accordingly, I would remand for a new trial on both economic and non-economic damages. *See Rice v. Erie R.R. Co.*, 114 A. 640, 641-42 (Pa. 1921) (awarding a new trial for a jury to assess at least nominal damages in wrongful death action where the trial court did not permit the jury to award damages because the plaintiff did not quantify the amount of pecuniary loss).

For these reasons, I dissent from the Majority's holding that Wife is not entitled to a new trial on the economic damages.

---

[3] I disagree with the Majority that Wife was required to assign an "economic value" to Decedent's household services. *See* Maj. Op. at 12 n.6. In my view, the uncontroverted evidence of the household services Decedent performed, and would have continued to perform absent Appellants' negligence, coupled with Decedent's life expectancy of an additional 20.5 years provided the jury with a reasonably fair basis to award damages. This is analogous to the wife-plaintiff in *Rowles*, who did not quantify her husband-decedent's monetary support with a dollar figure but provided other evidence upon which this Court found the jury could assign damages. *See Rowles*, 38 A.2d at 258.